Good afternoon, your honors. May it please the court, Jonathan Massey for the Chickasaw Nation, which is a federally recognized tribe with 70,000 citizens in Oklahoma. With the court's permission, I'd like to reserve three minutes for rebuttal. Three points resolve the arbitration issue in this case. First, the special sovereign status of the Chickasaw Nation, which requires Caremark to make a clear and unequivocal showing of an agreement to arbitrate. That's the C&L Enterprises case. Second, Caremark's failure to meet its high burden given the fact that the Chickasaw Nation never signed any document containing an arbitration provision. In fact, not even the word arbitration. And then third, the Recovery Act, which would separately bar arbitration because it would hinder, within the meaning of the Act, the Nation's enforcement of its rights. Now, one way to start is to realize that vis-a-vis Caremark, the Nation is just as sovereign as the United States. And no one would think that if you enter into a contract with the federal government, you could send a contractual addendum during the course of that contract and tell the federal government that if it doesn't object or continues to perform under the contract, it's going to be bound to arbitration in a form of your choosing. No one does that with the federal government. And that's a non-starter in the context of sovereign immunity, constructive or implied waiver. That's the College Savings Bank case, which clearly holds that even if a sovereign is on notice, clear notice, that its activity will be deemed a surrender or a waiver of immunity, that is an unenforceable condition to impose on a sovereign. It seems that a premise of your argument is that entering an arbitration agreement waives sovereign immunity. But it's a little bit surprising that you're assuming that. Why wouldn't it be that just for any dispute for which the tribe does waive sovereign immunity, it will be resolved in arbitration? There are two layers to that question. First, we were forced into arbitration in a suit when we were the defendant in Arizona. We sued initially in Oklahoma, but then Karamark reacted by suing us separately in Arizona to force us into arbitration, which is a forum for the resolution of our rights. So arbitration would resolve our legal rights in a binding way. And the tribe was ordered and compelled to enter the arbitrable forum by force of federal judicial order. But did you argue in the district court in Arizona, we have sovereign immunity, we never waived it? We did not object to the federal court's jurisdiction. We didn't file a 12B2 motion or whatever. But that was because the injury to the immunity comes from being forced into arbitration. Right, so why didn't you say we never waived our sovereign immunity, we can't be forced anywhere? I don't understand. It's like you're assuming the arbitration clause waives sovereign immunity, so we couldn't have entered the arbitration clause. But it wouldn't waive sovereign immunity if an arbitration clause doesn't waive sovereign immunity. I don't understand why you just didn't say from the beginning we never waived our sovereign immunity here. Well, that's sort of what I'm saying, I think. You're saying we needed to plead that initially in Arizona. We did. We said forcing us into arbitration would waive our sovereign immunity. We did not object to the exercise of federal judicial jurisdiction, but that didn't waive our immunity until the court compelled us to enter arbitration. The arbitrable forum is the forum which surrenders our immunity. I don't think there's any argument that we needed to object to the federal court's jurisdiction, so long as we objected to the arbitration and said that we never agreed to that. Why is the arbitration provision any different from any other provision of the contract? That is, wouldn't your argument be the same if the contract says pay $100 or let us visit your reservation or whatever? Those are all parts of a contract. Or do you distinguish the arbitration? I think arbitration is special. Arbitration is a forum like a court for the resolution of your rights, so it purports to exercise a legally binding mechanism. If the contract says any dispute must be litigated in Arizona or New Mexico, would that also violate your immunity? If a tribe is dragged off into a forum to which it did not consent, yes, it does. It would violate sovereignty. You're distinguishing the forum from other types of obligation? I'm just trying to follow that because I understand you have some other argument, but as a generality, you sign a contract and it says, number one, we're obligated to do this, number two, we're obligated to do this, number three, we're obligated to arbitrate, and your position is you are bound by number one, number two, but you're not bound by number three. Is that right? That's very similar to what's happening here. In the case that Judge Friedland wrote, the tribe removed a case from state court to federal court and said we do not agree to suit in federal court, and this court held that the removal to federal court did not waive the tribe's immunity because the waiver of immunity is form specific. Like a state or like the federal government can consent to some forums and not others. Here the tribe is saying it does not agree to an arbitrable forum because it never signed an agreement. The relevant officials never had authority. In other words, the only way the tribe surrenders immunity or agrees to arbitration is through an act of the legislature and the governor of the tribe. That's excerpt of record 19. That didn't occur here. The tribe had no notice, had no sign, nothing. There was no proof of delivery of even a provider manual until the year 2014, and the tribe pharmacies entered agreements in 2003, 2005, and 2010. The tribe did not agree to an arbitrable forum for the resolution of its rights. That's why arbitration in the sense of immunity is like a court. You can agree to a certain court but not others. You can agree to an arbitrable forum but not others. Here the tribe does not agree to an arbitrable forum, and its suit in Oklahoma specifically said we agree to waive immunity only with respect to this suit. That's excerpt of record 53. The tribe's waiver of immunity extended only to its lawsuit in Oklahoma. That was why we believe that being dragged off to an arbitrable forum that we did not agree to is a violation of our sovereignty and requires a clear and unequivocal showing of an agreement, the formation of an agreement which does not exist here. And that is the burden of Caremark, this party seeking arbitration, to make that showing, and it hasn't. And so that's our basis for urging reversal of the Arizona district court decision in this case. Can I ask you another question? So it seems like you've tried to argue that the amendment process here mattered, but as far as I can tell, the provider manuals always incorporated the rules of the American Arbitration Association, and those rules all the way back to 2002 have required that arbitrators rule on threshold issues of arbitrability. So I'm not sure I understand why the amendment matters if this provision was in all of the provider manuals all the way back. Well, it matters for several reasons. First is there are only three of the pharmacies in this case signed agreements with advanced PCS in 2003. Those provider agreements are not in the record. So there is no document signed by the tribe saying we agree to incorporation of the provider manual with respect to those Ardmore, Tishomanga, and the nation's online pharmacy refill. So there's nothing to suggest those pharmacies ever signed a document that incorporated, even incorporated by reference, the provider manual. I mean, how would they have functioned as a I thought that the that Caremark had a pretty good argument that you can't really have this business relationship without the provider manual. You wouldn't know how to submit claims. Do you have a response to that? Yes, our response to that is College Savings Bank, basically. That yes, for a non-sovereign, that argument may have force. But for a sovereign, simply sending a provider manual to the sovereign and saying operate under these terms and conditions and you will be deemed to agree to the arbitration provision does not suffice to establish a clear and unequivocal showing. That's just a you must have you must have read it and you must have seen this provision. But our sovereign is not obligated to raise its hand and object and say, I do not agree to this. It's the burden is on the other party seeking to bind the sovereign. Look, if you're dealing with the government, with a sovereign, the way Boeing and Northrop Grumman and people do, you sit down and negotiate a specific signed contract that goes through all the relevant procedural requirements. If you need to get a waiver from the tribal legislature or governor, you get it the way that in the federal system, you don't rely on a contracting officer to sign something. You would go run the procedural traps and make sure that the Department of Defense agreed to an arbitration provision. The same principles apply here. And go back to your question, Judge Friedland, about the AAA rule. So there would be three layers of incorporation by reference under their view. That we signed a provider agreement that then incorporated by reference a provider manual, which then incorporated by reference the AAA rules, which then had a delegation clause. And that is not clear and unequivocal showing. Even under there's an Arizona case that we cite called Allison Steel that says one layer of incorporation by reference is not a clear and unmistakable showing. Surely three layers of incorporation by reference are not a clear and unequivocal showing. There was a way to do this. If Caramark had really wanted to bind the tribal pharmacies, sophisticated parties know how to do that, which is, as I outlined, through specific agreements that meet all the relevant procedural requirements. I thought I saw somewhere in the briefing the argument that, conversely, the government in these comparable health contracts doesn't just sign something with an arbitration in it deep inside. It contracts around it and makes sure that the government is not agreeing to arbitration. Am I remembering that wrong or do you have a counter to that? No, I think you're right. It's Caramark though. Caramark's contract is page 290 of the excerpt of the record. Caramark puts in, of course, the federal government is not bound. IHS, the Indian Health Service, is not bound by arbitration. Caramark puts it in and they do not put it in at the insistence of the government. The reading of the office was that the government made sure that that was in the contract, not Caramark. Well, we don't know. It's a formed Caramark contract. Caramark prepares all the contracts. It's not that the government is doing the drafting, but I see I've got not a whole lot of time and perhaps I'll reserve the remainder for rebuttal. Great, thank you. Thank you and may it please the court. Sarah Harris for the Caramark Appellate. For years, the tribal pharmacies have invoked the provider agreements with Caramark to obtain hundreds of millions of dollars in reimbursement. And from day one, those provider agreements, which the tribe signed, incorporated arbitration provisions in the provider manuals as if the arbitration provision was expressly set out in the provider agreement. For two reasons, this court should affirm the district court's decision and hold plaintiffs to their agreement. First, from day one, the provider agreements have incorporated delegation clauses that Judge Friedland referred to that require the arbitrators to decide as challenges to the enforceability of the arbitration agreement, including sovereign immunity. Sovereign immunity does not mean plaintiffs never agreed to arbitration as their dispute resolution method. Rather, sovereign immunity attacks whether plaintiffs waived their immunity in that forum and could stop arbitrations from resolving a particular dispute without their consent. And second, even if this court were to decide the plaintiff's challenges, sovereign immunity does not apply when, as here, the tribe is the plaintiff. Again, the backdrop of this suit is that the tribe is seeking hundreds of millions of dollars from Caramark for claims that Caramark purportedly should have reimbursed but did not do. And regardless, the tribe waived any immunity it had by repeatedly assenting to clear arbitration agreements from day one all the way to the present. Now let me just start with the delegation clause because I think that could be a pretty clear path through this particular case. I think the court just needs to sort of find the three things in order to affirm the district court's score on this score. One is that there was a valid delegation clause, and I think under Judge Wallace's decision in Brennan v. Opus Inc., that should be beyond dispute because the delegation clauses that were contained in the provider manuals that all of the plaintiffs had and agreed to as of their initiation of their relationships here all included an incorporation of the AAA rules. And again, under the Brennan decision, that is clear and unambiguous assent to a delegation clause. And then second, I think the court simply needs to say that sovereign immunity is not a challenge to the formation of an arbitration agreement or the delegation clause for the reasons I just discussed. And the reason for that is that, again, sovereign immunity is not sort of saying you can never agree to arbitration. The upshot is you didn't agree to waive your immunity in any particular case before the arbitrators. So one example that I think illustrates this distinction is then Judge Gorsuch's decision in the 10th Circuit in the U-Tribe case. Because what the tribe actually did was they said, we agree all disputes are going to be resolved only in the District of Utah. So if you went off and sued in the District of Oklahoma, you breached that provision. But the tribe also included a provision that said, we absolutely do not, under any circumstances, waive our immunity. So the 10th Circuit said, okay, taking those two things together, the tribe has agreed it's not going to go out, and no one in this contract is going to proceed in other district courts. You breached the agreement by doing that. But the tribe retains its authority to say in the District of Utah, it's not waiving its immunity. And so on a case-by-case basis, if it did not waive immunity, the District of Utah wouldn't be able to proceed in that particular case. So this relates to the question I was asking Mr. Macy, I think, about why an arbitration clause would necessarily waive immunity. It seems like it could be like the Ute case, where instead it says any dispute that we do participate in will be in a certain place, but we still can assert immunity case-by-case. But I didn't really understand you to be disagreeing in your brief about the idea that they'd waived immunity. Are you now saying that they haven't? No, no, I absolutely agree that they waived immunity. And I think the CNL case has just thought of it on that point. I'm saying in the first instance, I don't even know that you as the court need to resolve that, because the question of whether sovereign immunity bars the arbitrators from proceeding isn't a question that goes to whether an arbitration agreement formed. I think it goes to enforceability for the reasons we sort of discussed, which is it's blocking the arbitration from proceeding. It's giving essentially the tribe a defense were it a defendant to proceed. So you're saying they can't argue in the arbitration that they have immunity? No, no, we are absolutely not saying. So what we're saying is that if the court affirms the district court, I think the district court was right on this score, all that you're saying is all of these issues go to the district court. We will certainly say in arbitration. All of them go to the arbitrator. Yes, we are certainly saying they waive their immunity six ways from sending in these agreements. And that's what we would say to the arbitrators. But the threshold issue, I think, for this court, at least with respect to the delegation clauses, who should decide that question? And our first submission is because there is a delegation clause here, this question goes to the arbitrator. The arbitrator can entertain the argument that the tribe still enjoys its sovereign immunity and for a bunch of reasons we can get into on the merits, we think that is not correct at all. And so does that mean then under your procedural analysis, it goes to the arbitrator, the tribe raises immunity, the arbitrator obviously agrees, then that's the end of it. But the arbitrator says, no, no, you didn't waive it, here's my decision. And then what, the tribe takes it under the Federal Arbitration Act to the district court and says overturn the arbitrator. The posture of this is sort of weird because, again, the tribe is proceeding as a plaintiff before the arbitrators. They're sort of the masters of their complaint and their lawsuit, so they don't have to proceed. I'm not asking you, are they going to win? But am I right that your view of the procedural flow is the arbitrator decides the immunity question. If in the tribe's view they get it wrong like anything else an arbitrator gets wrong, you can try to overturn it in district court. Yes, Judge Boggs, under 9 U.S.C. section 10 of the Federal Arbitration Act provision, that is correct. There is an opportunity for judicial review of the arbitrator's decision. And I think that just underscores that arbitration is obviously an established and fair way of resolving these disputes. And that it's not like the arbitration is the absolute final say on any of these issues, even though section 10 offers pretty narrow grounds for eliminating an arbitral decision. But I also just want to turn quickly to sort of two points that appellant's counsel made. One of which is the idea that there was just nothing signed in the arbitration agreement in this case. I think that's just demonstrably untrue because, again, the provider agreements that all of these plaintiffs signed on day one said that you confirm receipt of the provider manual, that that is literally part of the three-page provider agreement. So the form example is, for instance, page 147 to 148, or page 152 of the record. So they confirm receipt of the manual, and then they also confirm that the terms of the manual are incorporated into the provider agreement as if they were sort of expressly typed out in that agreement. And that's just sort of the first way in which they assented to it. The manuals were clearly provided. The Fifth Circuit's Crawford decision illustrates, just rejects the idea, that the arbitration provision was somehow hidden from view or unaware to the parties. And from then on, you could reach the amendment process because the tribe has sort of doubled down in successive forms of doing that. But I don't even think that you necessarily need to do that. Second of all, counsel did mention that three of the actual sort of proof of incorporation of the manual into the agreement is not in the record. But I don't think that's quite a fair characterization. So that's with respect to our petition manual and the Chickasaw Online Pharmacy. So we do know those plaintiffs signed the provider agreements, and we also know that the operative manual included the same arbitration provisions in all the other manuals. And that's at 3 ER 133. It says actually on its face in that provision that it makes clear what's I think obvious in the succession of these contracts, which is that the standard practice is for the manual to set forth the more detailed terms and the provider agreement to kind of lay out the basics, and that the two of them are an integrated whole. Second of all, for Tishomingo, I think we can do even better than that. Because at 3 ER 246 to 47, there's actually an addendum that they specifically signed, that the provider agreement includes the manual. Third, there's the declaration from Stephanie Harris, who has devoted 15 years to literally reviewing all these contracts for all of the different types of pharmacies, governmental, non-governmental, who join these pharmacy networks. And her sworn declaration says the standard practice for these agreements, as well as just generally, is to incorporate by reference the manual. And the only legal argument, the only argument that the other side has offered against that, was that this was somehow an unsubstantiated or self-serving declaration. And as a matter of law, I don't think that argument can prevail under this court's SEC versus FAN decision. I mean, declarations are often quote-unquote self-serving, but this one was highly detailed, and explained why Ms. Harris had familiarity with the industry, and why it made sense that for basically every provider agreement under the sun, they always incorporate the manual. Because this is an industry where there's a fast-moving regulatory environment, and just the terms of how reimbursements happen changes a lot. So it's just sort of inconceivable that there's just sort of three plaintiffs out of the entire mind run of all of the plaintiffs who have raised challenges to these agreements, who somehow had a provider agreement that did not incorporate the manual. I don't think that's plausible. And then finally, the other side mentioned the record site ER-290, the idea that perhaps the federal government or that Caremark thought that governments cannot be bound, and therefore sort of had a carve-out. I don't think that's a plausible inference from the record. I think it simply shows that for the Indian Health Service, there are sort of separate types of contracts that might arise. But I think the opposite inference is just as plausible with respect to these pharmacies, which is that they did not raise their immunity, and that they did not in the context of, I think that's in the context of the Medicare program, but did not include that provision. Finally, just with respect to the idea that the signatories here lacked the authority to waive tribal immunity, I don't think that's plausible either. Again, first of all, the people who signed these agreements are very senior tribal officials, one of whom is now the lieutenant governor and was at the time the chief of pharmacy services for the Department of Health. Normally, when tribes want to limit their ability to waive sovereign immunity, and this is in all the cases that the other sites, like Sanderlin and Amherst, what happens is there's an ordinance or a provision that says up front, only the tribal council or governor can waive immunity. They do point to one provision here, but the Chickasaw Code 18-401.1b, actually by its terms, if you look it up, it is very explicit. It only applies to mortgages or other property within the jurisdiction of the tribe. And so I think that provision is actually deeply unhelpful to their position here, because the inference is, yes, the tribe did care deeply about limiting its waiver in a particular type of contract, mortgages, or other property transactions where the Chickasaw Nation is a party. It does not care about limiting waivers with respect to other transactions and has not implemented laws or ordinances that would do so here. And so instead, I think the regular presumption applies, which is that these senior officials who are advancing with the agreement enter into contracts with hundreds of millions of dollars for reimbursement for the tribe and have lots of other really important provisions, binding the tribe to federal law, providing for indemnification, committing them to pretty complicated reporting schemes and other provisions, also have the authority to waive the tribe's immunity in arbitration and to agree to that. So if the court has no further questions, I'm happy to answer any of them, but we do ask that you affirm the disreport. I think you have about a minute and a half for rebuttal. Thank you, Your Honor. Just a few points. First, the Brennan decision that my friend on the other side referred to is inapposite here because there was no dispute over formation of the contract in that case. It was an executive president of a bank who agreed he had signed the arbitration clause, and the only argument was that it was unconscionable. Here, the tribe says there was no formation, no meeting of the minds, no consideration, no agreement, because it never signed or agreed to the arbitration provision. This case is like the Damascus case. You don't say there's no contract at all, I didn't think. To the arbitration provision, it's like the Damascus case. The Damascus against ITT, which is an Arizona 1999 case that we cited in our brief, that talks about an employer that inserts terms and conditions into the employee handbook, and the court says the insertion after the fact of those terms and conditions is invalid. The remainder of the employee contract is valid. That's exactly what happened here. The arbitration provision here was slipped in after the fact through provider manuals that the tribe did not agree to when it signed the provider manual. Maybe the same point. Are you saying that there was no arbitration in the original provider manuals? I thought there was. Not in the documents that we signed. There's no arbitration provision. Wait a minute. What's quote slipped in in your statement is the whole provider manual. That's correct, Your Honor. Is that clear that that's your point? Well, it's actually no. I think as our brief makes clear, for example, they're soon to enforce the 2020 provider manual. If you looked at the provider manuals that were enforced when we signed the contract, when we signed the provider agreement, our brief walks through this. All the pre-2014 provider manuals did not cover this dispute because they were limited to controversies in connection with or arising under the contract, the provider manual. The tribe is not suing under the provider manual or the provider agreement or any other contract. It's suing under the Recovery Act, which gives it statutory rights, which the care mark is violated here. That's footnote 17 of the complaint, which is at page ER58. If you said to the tribe, you're bound by the provider manuals that were in existence when you signed the provider agreements, then you'd have to conclude that this dispute falls outside the whole arbitration clause. Then wouldn't the arbitrator be the person that would decide that in the first instance? You might be right in that case, and you might be able to convince an arbitrator that this was slipped in, in your view, after 14, but there still was an arbitration agreement. Well, the arbitrator needs to step out in the first instance because, two things, the tribe's formation argument is that the requisite agreement, the requisite meeting of the minds, did not occur here. Assuming that it did and sending that agreement or that dispute to the arbitrator violates sovereign immunity in the first place. In other words, you can't say the arbitrator will decide sovereign immunity when the tribe's argument is the arbitrator is the very form that we didn't agree to. That's why I think this court stayed the district court order pending appeal because that's irreparable injury, having the arbitrator decide the very issue that we say the arbitrator is not authorized to decide, which is our immunity and whether we agreed sufficiently, clearly, and unequivocally to arbitration. That's circular. But the point I was making is that my friend on the other side says you should be bound at least by the provider manuals that were in existence when you signed the provider agreements. Those manuals don't cover this dispute. The reason I said slipped in is because they are relying on the 2020 version of the provider manual, which is 17 years after we first signed a provider agreement. Those three provider agreements are not in the record. The early ones, that was a different company. That was advanced PCS. Stephanie Harris was not in the industry until 2006, and she didn't take her current position until 2015. She has no personal knowledge of what a different company did in 2003. We're way over your time. Could you wrap up? If there are no questions, I apologize for running over, but I appreciate the opportunity. Thank you both for the very helpful arguments. This case is submitted, and we're adjourned for the day.
judges: WALLACE, Boggs, FRIEDLAND